### JENKINS v. MAHOPAC IRON-ORE CO.

(*Supreme Court, General Term, First Department.* June 6, 1890.)

1. MASTER AND SERVANT—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.
    In an action by a miner against a mining company for personal injuries, it appeared that plaintiff was assisting his boss to repair a stairway beside the track on which the lifting cars ran, and that while standing on the track a car came up and struck him. Plaintiff was familiar with the movement of the cars, and gave no warning to have them stopped while he was engaged on the track. *Held*, that plaintiff was negligent, and could not recover.

2. SAME—FELLOW-SERVANT.
    The timber boss who superintended the repairs, and assisted in making them, was plaintiff's fellow-servant.

3. SAME—NEGLIGENCE OF MASTER.
    Disputes between the timber boss and the under-ground boss, the former's superior, relative to the management of the lifting cars while repairs were being made in the slope, are inadmissible to show negligence on part of defendant.

Exceptions from circuit court, New York county.

Action by William Jenkins, an employe, against the Mahopac Iron-Ore Company for personal injuries. Plaintiff nonsuited, and excepts.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*G. W. De Lano* and *P. Q. Eckerson,* for appellant. *W. C. Holbrook* and *Matthew Hale,* for respondent.

VAN BRUNT, P. J. This action was brought to recover damages for personal injuries sustained by the plaintiff, while he was in the employ of the defendant, in consequence of its alleged negligence. The defendant was engaged in the mining of iron ore at Mahopac Falls, in this state, and in the customary course of such work used certain cars or skips, running on an inclined railway from the outer surface of the mine to the interior, for the purpose of conveying ore from the interior to the surface. The plaintiff first went to work in the defendant's mine in 1882 to load iron and rock into the skips, and send them to the top. In March, 1886, he went into what was called the "timber gang," whose duties were to keep the slopes, stairways, etc., in repair. At the time of the accident one Berryman was the boss timberman. The accident which resulted in the injury complained of happened in one of the slopes of the mine over which double tracks ran, from the surface to the lowest part of the mine, upon which the cars or skips were operated. On the south side of the slope there was a stairway running to the bottom of the mine, separated from the south track adjacent thereto by a hand-rail. This stairway was for the protection and safety of the employes in going down to, and ascending from, the mine. The skips were lowered and hoisted by steam and machinery in the engine-room, on the surface, by means of a wire rope run-

ning over a drum in the engine-room. The skips were hoisted and lowered by signals given by the bellman stationed in the slope, although these signals could be given at any place in the slope. On the morning of the accident the plaintiff went down the stairway of the slope with Berryman. Upon their way down they saw an upright of the hand-rail of the stairs out of place. The plaintiff was sent by Berryman to the surface to get a piece of scantling. He went and got it and returned. Berryman cut off its proper length, and told plaintiff to get over upon the track, and hold up that end while he nailed it. The plaintiff got over the rail, and upon the inside of the track. He testified that he knew the skip was below him, from the position of the rope, and also that the skip was not running; that the rope was still, otherwise he would not have gone there; and that he knew, when he stepped on the track for the pupose of doing the work, that his safety depended upon the skips not starting—not running up—while he was there, and that he was only safe so long as the skip did not move. He further testified that unless he had supposed that the bellman had been notified not to start the skip he would not have gone there. While he was standing there the skip came up, struck the plaintiff, and he was 'injured; and for these injuries this action was brought. Upon the trial the court dismissed the complaint, and ordered the exceptions thereto to be heard in the first instance at the general term.

We see no reason for interfering with the conclusion at which the learned justice has arrived. It is clear, from the testimony of the plaintiff, that he was fully aware of the danger which he ran in getting into this position without taking some precautions against the starting of the skip, or watching for its coming. It appears further, from the uncontradicted evidence in the case, that repairs of this kind had been accustomed to be made between skips; and this accounts for the fact that the plaintiff took no means for the stopping of the skip during the making of these repairs. He assumed that he would have time before the skip came up to complete his work, and therefore kept no watch for the coming of the skip, which, by the moving of the cable by which it was drawn up past the plaintiff, was easily ascertainable. It is true, the plaintiff testifies that he would not have gone into this position had he not supposed that his fellow-laborer had given directions for the stopping of the skip. But the evidence shows that work of this description was accustomed to be done between skips; and that is the reason why plaintiff took no steps to notify the engineer, when he passed the engine-house to get the scantling, that they were going to do this work upon the slope, and that the skip must not be started until it was completed. Even if the view claimed upon the part of the plaintiff, that he supposed that Berryman, his co-laborer, had given the signal not to start the skip, be taken, yet the happening of the accident was the result of the carelessness of Berryman, his co-laborer; and the defendant, under the circumstances, would not be responsible.

It is claimed, however, that Berryman was not a co-laborer of the plaintiff, but his boss, whose commands he was bound to obey. It is undoubtedly true that Berryman had the direction of this work; but he was not a superintendent, but was a man who did the work itself,—regulating the manner in which it was to be done, to be sure, but was not in any respect the *alter ego* of the defendant. It appears from the way in which the work was being done at the time of the accident that this man Berryman was a fellow-servant. It was Berryman who was doing the work, and it was the plaintiff who was assisting him; and they in no way occupied independent relations. These two men formed the gang which was doing this work, and therefore the relations of fellow-servants plainly existed between them. We fail to see, therefore, how the plaintiff can recover, because the evidence showed that the plaintiff had been guilty of contributory negligence, in the *first* place; and, *secondly*, that, if it was negligence that caused the accident, it was the negligence of Berryman, his fellow-servant.

Our attention is called to an exception to the exclusion of evidence. It appeared that one Case was the superintendent of the mine, and one Lewald was the under-ground boss, who was the superior of Berryman. Both gave instructions to Berryman as to the work to be done; and Berryman having testified that the instructions that he had as to the doing of the work were that it should be done between skips, and that he had never stopped the skip. He was then asked the question: "Did or did not you and Lewald ever have any quarrel in regard to the skip matter? *Answer.* Yes, sir; many a time. *Q.* What were the occasion of these troubles?" This question was objected to, and the objection sustained, and an exception taken. It is claimed that this was error, as the evidence might have shed light on the alleged neglect of the defendant to properly guard the plaintiff in the prosecution of his word. We do not see that the disturbances between Berryman and Lewald could have had any such results. The plaintiff was perfectly familiar with the working of the mine, and the manner in which the work was required to be done. He knew the dangers; and, if he accepted the employment knowing the dangers, he took the risk; and simply because Berryman was of the opinion that the work should be done in a different way, which was all that his evidence would tend to establish, it in no way relieved the plaintiff from his own negligence in not looking out for the skip, when he knew that he had placed himself in a position of danger. Upon the whole case, therefore, we do not see any reason to disturb the ruling of the court below, and the exceptions must be overruled, the motion for a new trial denied, and judgment ordered for the defendant, with costs. All concur.